E. Mauran Beals, trustee, & others, executors & trustees,[1] *vs.* Commissioner of Corporations and Taxation.

Norfolk.    May 7, 1976. — August 10, 1976.

Present: Reardon, Braucher, Kaplan, & Wilkins, JJ.

*Adoption. Devise and Legacy,* Adopted child. *Statute,* Retroactive statute. *Taxation,* Succession tax. *Constitutional Law,* Taxation, Equal protection of laws.

Statute 1967, c. 463, which eliminated the distinction between lineal descendants and adopted children of lineal descendants in the inheritance tax tables with regard to property passing or accruing upon the death of persons who died after the effective date of the act did not apply to the exercise of a power of appointment in favor of adopted children under the will of the donor of the appointment who died in 1904, despite the revised rule of construction of St. 1969, c. 27, § 2, which made the presumption of inclusion of adopted children retroactive. [783-785]

The imposition under R. L. (1902) c. 15, §§ 1 and 2, and St. 1967, c. 463, § 3, of an inheritance tax when an adopted child of lineal descendant receives property and no such tax when a natural child of a lineal descendant receives property in the same circumstances does not constitute a denial of equal protection of the laws. [785-787]

Petition filed in the Probate Court for the county of Norfolk on April 21, 1972.

The case was reported to the Appeals Court by *Ford,* J. The Supreme Judicial Court granted a request for direct appellate review.

---

[1] The plaintiffs are the trustees under the will of Arthur Hunnewell and the executors and trustees under the will of Jane B. Hunnewell.

*Samuel B. Potter* (*Edward O. Proctor* with him) for the plaintiffs.

*Paula R. Rosen,* Assistant Attorney General, for the Commissioner of Corporations and Taxation.

WILKINS, J. The plaintiffs challenge the imposition of inheritance taxes on transfers of property to certain adopted children where no such tax would be imposed in similar circumstances if the recipients were natural descendants of the decedent. They argue that recent legislative changes equalizing the rights of adopted and natural children under probate law should be read as requiring, by implication, a similar result with respect to the level of inheritance taxes payable on the transfer of property to adopted and natural children in identical circumstances. They argue further that, if the applicable inheritance tax statutes do distinguish between the decedent's natural descendants and the adopted children of lineal descendants, the additional tax burden on an inheritance by an adopted child of a lineal descendant would unconstitutionally deny the equal protection of the laws to the adopted child. Unpersuaded by these arguments, we conclude that such a tax is valid.

The decedent, Arthur Hunnewell, died in 1904. He created a testamentary trust, the income of which was payable to his wife for life. On her death, a trust share was created for each surviving daughter. The income of each daughter's share was payable to her during her life, and, on her death, her share was to be distributed as she appointed by will. See *Beals* v. *State St. Bank & Trust Co.,* 367 Mass. 318 (1975), for a case concerning the distribution of a trust share not involved here, where these testamentary provisions are described more fully. In her will Jane B. Hunnewell, one of the testator's three surviving daughters, exercised her power of appointment in favor of her two adopted children. She gave each child $50,000 outright and the balance in trust.

The plaintiffs commenced this proceeding against the

Commissioner of Corporations and Taxation in the Probate Court for the county of Norfolk pursuant to G. L. c. 65, § 30, requesting a determination whether the tax on so called collateral legacies and successions imposed by R. L. (1902) c. 15, §§ 1 and 2, the inheritance tax statute in effect at the decedent's death, is payable with respect to the property disposed of by his daughter's exercise of her power of appointment under his will. The probate judge reserved decision and reported the case to the Appeals Court for decision. See G. L. c. 215, § 13. We granted the plaintiffs' application for direct review.

1. The plaintiffs concede that a literal application of the inheritance tax laws in effect at the testator's death requires the payment of an inheritance tax with respect to the property passing to Jane B. Hunnewell's adopted children.[2] The plaintiffs argue, however, that the distinction between lineal descendants and adopted children of lineal descendants has been removed by implication by several recent legislative enactments which have changed aspects of the probate law with respect to adopted children with the apparent purpose of putting "adopted children in the same position as natural children." *Katz* v. *Koronchik*, 369 Mass. 125, 128 (1975). The Legislature, as part of this general revision of the statutory treatment of adopted children, has amended G. L. c. 65, § 1, to elimi-

---

[2] The adopted children of Jane B. Hunnewell are deemed to have received the property, transferred pursuant to her exercise of the power of appointment, from the donor of the power. *Curtis* v. *Commissioner of Corps. & Taxation*, 340 Mass. 169, 172 (1959). Because Arthur Hunnewell died before May 4, 1920, the applicable tax on this inheritance is not that imposed by G. L. c. 65 but rather that imposed by R. L. (1902) c. 15, as the tax statute "theretofore applicable." G. L. c. 65, § 36. See *Ferguson* v. *Commissioner of Corps. & Taxation*, 316 Mass. 318, 324-325 (1944). Under R. L. (1902) c. 15, §§ 1 and 2, a five per cent tax is imposed only on "collateral" legacies and successions. Some of the transfers excluded from these "collateral" legacies are bequests to a "lineal descendant," an "adopted child," and a "lineal descendant" of an "adopted child" of the decedent. The listing of these relations separately indicates that "lineal descendant" does not include an "adopted child." Therefore, a bequest to an adopted child of a lineal descendant is not excluded from the tax imposed by that chapter.

nate the distinction in the inheritance tax tables between lineal descendants and adopted children of lineal descendants. St. 1967, c. 463, §§ 1, 2.

However, St. 1967, c. 463, equalizing the tax burden, has no application to the transfer involved in this case because § 3 of that statute provides that the revised rates for adopted children apply to "property or interests therein passing or accruing upon the deaths of persons who die after the effective date of the act." St. 1967, c. 463, § 3. Although this 1967 statute applies by its terms only to G. L. c. 65, § 1, governing the inheritance tax with respect to persons dying after 1920, the fact that the higher tax rates on property passing to adopted children of lineal descendants were continued for decedents dying between 1920 and 1967 indicates that the Legislature intended that the previous rates should continue with respect to decedents dying before 1920 as well.[3] When the Legislature has stated so clearly when the equalized inheritance tax rates shall take effect, a different intent cannot be derived from other "equalizing" statutes dealing with the rights of adopted children.

In support of their contention that the Legislature has impliedly amended the inheritance tax statutes, the plaintiffs rely heavily on St. 1969, c. 27, § 2. That statute made retroactive, as far as is constitutionally permissible, the revised rule of construction appearing in G. L. c. 210, § 8, which provides that an adopted child shall be included within the words "child," "grandchild," "issue," "heir" and their equivalents unless a contrary intent plainly appears in the terms of the instrument.[4] By its terms, St. 1969,

---

[3] This conclusion is consistent with the apparent policy, embodied in G. L. c. 65, § 36, that the tax law applicable to persons dying before 1920 not be changed.

[4] Statute 1975, c. 769, § 3, eliminated the retroactive effect of G. L. c. 210, § 8, purporting to do so as of the date that St. 1969, c. 27, became effective. See St. 1975, c. 769, § 4, and St. 1969, c. 27, § 3. We accept the plaintiffs' contention that we should not consider this 1975 amendment *in passing on their argument that St. 1969, c. 27,* impliedly amended the inheritance tax laws so as to require equality of treatment of adopted and natural descendants.

c. 27, § 2, is restricted to the applicability of G. L. c. 210, § 8. Statute 1969, c. 27, § 2 (making the presumption of inclusion of adopted children retroactive), and St. 1967, c. 463, § 3 (making equalized inheritance tax treatment prospective only), are not so inconsistent as to suggest an intention to amend the 1967 statute to make equalization of inheritance tax consequences applicable retrospectively. See *Colt* v. *Fradkin,* 361 Mass. 447, 449 (1972); *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519, 524 (1970); *Gregoire, petitioner,* 355 Mass. 399, 400 (1969); *Shelist* v. *Boston Redevelopment Authority,* 350 Mass. 530, 533 (1966); *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 713-714 (1953). Cf. *Rennert* v. *Trustees of State Colleges,* 363 Mass. 740, 743 (1973); *Doherty* v. *Commissioner of Administration,* 349 Mass. 687, 690 (1965). The construction of a will or other document as required by G. L. c. 210, § 8, would not be impaired by the imposition of an inheritance tax which is higher as to property passing to an adopted child of a lineal descendant (pursuant to that construction) than as to property passing to a natural descendant.

2. The discrimination in the applicable tax statute, as we have interpreted it, imposing an inheritance tax when an adopted child of a lineal descendant receives property and no such tax when a natural child of a lineal descendant receives property in the same circumstances does not deny equal protection of the laws.[5]

Classifications drawn by the Legislature in allocating the tax burden are accorded considerable deference and will be held to satisfy the requirements of equal protection if "supported on any conceivable basis." *Frost* v. *Commissioner of Corps. & Taxation,* 363 Mass. 235, 248, appeal dismissed, 414 U.S. 803 (1973). See *Mary C. Wheeler School, Inc.* v. *Assessors of Seekonk,* 368 Mass. 344, 346-347

---

[5] We accept the plaintiffs' position that, under G. L. c. 65, § 30, the taxpayers may raise this constitutional issue, although, in one sense, the disadvantage is sustained by the recipient adopted children, who are not parties to this proceeding.

(1975); *Weinstock* v. *Hull,* 367 Mass. 66, 70, appeal dismissed, 423 U.S. 805 (1975).

The plaintiffs grant that this discrimination against adopted children may have had a rational basis in the past but argue that this rational basis disappeared when other aspects of the probate law were changed to treat adopted children as natural children of their adoptive parents. However, the Legislature has provided for equal taxation as set forth in St. 1967, c. 463, and the plaintiffs' challenge must be to that part of St. 1967, c. 463, which does not make equal taxation applicable to the receipt of property from decedents dying before the effective date of that act. Legislative line drawing, based either on the date of the testator's death or on the date of the transfer of possession, may produce different tax consequences in nearly identical situations, but such lines must be drawn to make a tax system workable and alterable.[6] A distinction in inheritance tax consequences based on the date on which persons died seems presumptively rational, and the plaintiffs have not shown the contrary on the facts of this case.

There is an independent, rational basis for the distinction made by the tax statute. The different treatment given adopted children from that given natural children under our former probate law was not constitutionally infirm. Cf. *Labine* v. *Vincent,* 401 U.S. 532, 537-539 (1971). The Legislature was entitled to conclude that the relationship between a decedent and the adopted children of his lineal descendants was likely to be a little less close than were his ties with his natural lineal descendants so that a greater tax burden on the gift to adopted children of lineal descendants would be tolerable. At one time this kind of distinction was supported on the perhaps now archaic basis that collateral kindred or strangers in blood have a

---

[6] A rule that equal tax treatment should apply to all persons receiving property after a certain date would create similar discrimination between beneficiaries. For example, the rate of tax imposed on inheritances received by two adopted children, both inheriting from a decedent dying in 1904, might be unequal depending on whether the decedent created future interests or· on the fortuitous termination of life interests· prior to the adoption of equalized inheritance tax ·rates.

lesser "moral claim" than that of kindred in the direct line. *Minot* v. *Winthrop*, 162 Mass. 113, 123 (1894). Although the Legislature has abolished such a distinction prospectively for tax purposes and even more generally for the purpose of construing wills and trust instruments (as we have assumed for the purposes of this case), there was no constitutional requirement that the distinction be eliminated in its entirety. The rational basis which sustained the earlier, general distinction may sustain, as well, the vestigial distinction in the inheritance tax law.

3. An appropriate judgment shall be entered in the Probate Court. We note that the petition under G. L. c. 65, § 30, raised questions concerning what interests created by exercise of the power of appointment are now taxable under St. 1902, c. 473, a question not argued before us.

*So ordered.*