LIBERTY MUTUAL INSURANCE COMPANY *vs.* COMMISSIONER
OF REVENUE.
(and nine companion cases [1]).

Suffolk. March 6, 1989. — July 11, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, JJ.

*Taxation*, Insurance company excise. *Constitutional Law*, Taxation, Equal
protection of laws.

The State excise tax imposed on domestic insurance companies by G. L.
c. 63, § 22A, is a "nondiscriminatory franchise tax or another nonprop-
erty" tax permitted under 31 U.S.C. § 3124 (a), with the result that
interest earned by insurance companies on Federal obligations was sub-
ject to taxation. [354-356]
Where G. L. c. 63, § 22A, setting forth the provisions of a State excise tax,
requires the interest earned on both State and Federal obligations to be
included in calculating the base on which the tax is levied, the excise
tax was not discriminatory and did not conflict with the provisions of
Federal law set forth in 31 U.S.C. § 3124 (a). [357]
The State excise tax imposed on domestic insurance companies by G. L.
c. 63, § 22A, does not violate the contracts clause of the United States
Constitution. [357]
The power of the Commissioner of Insurance exercisable under the provi-
sions of G. L. c. 63, § 22A, does not constitute an unlawful delegation
by the Legislature of its taxing power. [358]
The distinctions among taxpayers set forth in the State excise tax statute,
G. L. c. 63, § 22A, had a rational basis, thus were not vulnerable to
challenge under the equal protection clause of the Fourteenth Amendment
to the United States Constitution or under Part II, c. 1, § 1, art. 4, of the
Massachusetts Constitution, which prohibits unreasonable taxes. [358-
359]

---

[1] Five appeals by Liberty Mutual Fire Insurance Company were before
the Appellate Tax Board. Four other appeals by Liberty Mutual Insurance
Company were also before the board. The board rendered one decision for
the cases. See note 3, *supra*.

The plaintiffs have requested we await the outcome of a bank tax case
currently awaiting decision by the board. We deny that request.

We acknowledge the assistance of the amicus brief of Baybank Middlesex
and its affiliates, and State Street Bank and Trust Company.

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark A. Michelson (Samuel B. Bruskin & James F. Whipple* with him) for the taxpayers.

*Thomas A. Barnico,* Assistant Attorney General, for the Commissioner of Revenue.

*Edward F. Hines, Jr., & Robert M. Buchanan, Jr.,* for Baybank Middlesex & others, amici curiae, submitted a brief.

ABRAMS, J. Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (companies) appeal from a decision of the Appellate Tax Board (board). The board upheld the decision of the Commissioner of Revenue (Commissioner), who denied the companies' applications for abatement on the excise tax imposed on domestic insurance companies by G. L. c. 63, § 22A (1986 ed.).[2] The companies argue that the excise tax imposed by G. L. c. 63, § 22A, violates various provisions of the Federal and State Constitutions. We transferred the cases to this court on our own motion. We affirm the board's decision.

The companies are domestic insurance companies within the meaning of § 22A. Both companies filed excise tax returns for the taxable years ending in 1975.[3] As § 22A requires, the companies included in their total gross investment incomes the interest from Federal bonds, treasury notes, and other Federal

---

[2] General Laws c. 63, § 22A, provides in relevant part: "Every domestic insurance company coming within the scope of the definition of a domestic company in section one of chapter one hundred and seventy-five . . . shall annually pay, as part of its excise imposed under this chapter, an amount equal to one per cent of its total gross investment income earned during the preceding calendar year, as reported in its annual statement for said year filed with the commissioner of insurance and as shown in Exhibit 3 of said statement for a life insurance company or in Item 10, Column 8, Part 1, of the Underwriting and Investment Exhibit for any other domestic insurance company."

An excise tax is a tax on the performance of an act, the conduct of an occupation, or the enjoyment of a privilege, as opposed to a tax on income. See, e.g., *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corps. & Taxation,* 309 Mass. 37, 43 (1941); Black's Law Dictionary 506 (5th ed. 1979).

[3] The parties have agreed to use 1975 as an appropriate test year for the issues raised by the companies.

obligations, as well as interest on bonds exempt from taxation under Massachusetts law. The companies paid taxes which reflected the interest on the Federal and State obligations. The companies then applied to the Commissioner for abatement of the entire excise tax for the years 1971-1977. The Commissioner refused to abate the excise tax, and the board upheld the Commissioner's decision.[4]

1. *Supremacy clause.* The companies argue that § 22A violates the supremacy clause of the United States Constitution because it conflicts with a Federal statute, 31 U.S.C. § 3124(a).[5] This statute exempts all Federal bonds and other Federal obligations from all taxation except for a "nondiscriminatory franchise tax or other nonproperty taxes." *Id.*[6] The companies argue that the State excise tax of G. L. c. 63, § 22A, does not fall within the exception in the Federal statute and therefore § 22A impermissibly conficts with the Federal exemption for Federal bonds and obligations. The Commissioner argues that the Massachusetts excise tax of § 22A is a "nondiscriminatory franchise or other nonproperty tax" which is expressly permitted by the terms of the Federal statute. We agree with the Commissioner.

We have already considered this issue. The precedent set by *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 608, 619 (1981), compels the conclusion that "[t]he tax imposed by § 22A is a 'nondiscriminatory fran-

---

[4] The accuracy or computation of the amounts of the excise taxes assessed, reported or paid for each tax year is not before us.

[5] Title 31 U.S.C. § 3124(a) (1982) provides: "(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except— (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and (2) an estate or inheritance tax." In 1975, this statute was codified at 31 U.S.C. § 742.

[6] A franchise tax is a tax on the privilege of doing business within a State, as opposed to a tax on income. See, e.g., *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372 Mass. 478, 486 (1977). *Provident Inst. for Sav.* v. *Commonwealth*, 259 Mass. 124, 126 (1927).

chise or other nonproperty tax' permitted by [§ 3124(a)] . . . and therefore, the Commissioner is correct in [his] assertion that the interest earned on Federal obligations may properly be included in an excise tax." *Id.* at 616-617. The companies urge us to abandon our holding in *Massachusetts Mut. Life Ins. Co., supra.* We decline to do so.

"The label by which a tax is known should not control the constitutional principles by which it is judged." *Aronson* v. *Commonwealth*, 401 Mass. 244, 248 (1987), quoting *George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549, 552 n.3 (1978). See *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 288 (1977). In *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, we carefully looked behind the labels of the State statute to determine whether the excise tax of § 22A was a nondiscriminatory franchise or other nonproperty tax which is permitted under Federal law, or whether it was a property tax forbidden by Federal law. In our analysis, we noted that "[t]he tax measure [of § 22A] includes items that are not 'income' to the companies in the traditional sense, such as imputed home office rent, amortization of Federal investment tax credits, and earnings on assets held in connection with employee and agents' pension plans; and excludes items which are income in the traditional sense, such as capital gains. The fact that the measure of the tax mentions 'gross investment income' as reported in the annual statement does not divest the tax of its excise character. . . . Section 22A does not impose a limited income tax. Rather, it sets out a workable measure, a yardstick to calculate the value of the privilege of doing business in Massachusetts." *Id.* at 612. The United States Supreme Court has recognized that in State tax situations " 'rough approximation rather than precision' is sufficient." *International Harvester Co.* v. *Evatt*, 329 U.S. 416, 422 (1947), quoting *Illinois Cent. Ry.* v. *Minnesota*, 309 U.S. 157, 161 (1939). In enacting § 22A, "the Legislature meant to use the figure of total gross investment income as reported in the annual statement for insurance regulatory purposes as a benchmark by which to calculate the amount of excise payable for the privilege of doing business in the Commonwealth."

*Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co., supra* at 613-614.

The companies rely on *Northwestern Mut. Life Ins. Co.* v. *Wisconsin,* 275 U.S. 136 (1927), for the proposition that corporate excise taxes which include interest earned on Federal obligations necessarily must be struck down. The United States Supreme Court "has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property." *Werner Mach. Co.* v. *Director of Div. of Taxation,* 350 U.S. 492, 535 (1956). In 1981, we also noted that, "[s]ince the 1930's . . . the Supreme Court has upheld corporate excise taxes which include income immune from direct taxation. In a series of cases, the Supreme Court ruled: '[T]he corporate excises may be measured by income immune from a direct tax thereon.'" *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co., supra* at 615, quoting Powell, The Waning of Intergovernmental Tax Immunities, 58 Harv. L. Rev. 633, 633 (1945). We therefore continue to adhere to our conclusion that § 22A is a franchise or other nonproperty tax.[7]

---

[7] Some State courts have reached similar conclusions. See, e.g., *Department of Revenue* v. *First Union Nat'l Bank,* 513 So. 2d 114, 119 (Fla. 1987), appeal dismissed, 485 U.S. 949 (1988); *State Dep't of Assessments & Taxation* v. *Maryland Nat'l Bank,* 310 Md. 664 (1987), appeal dismissed, 486 U.S. 1048 (1988); *Centerre Bank* v. *Director of Revenue,* 744 S.W.2d 754 (Mo. 1988); *Garfield Trust Co.* v. *Director, Div. of Taxation,* 102 N.J. 420, 434, appeal dismissed, 479 U.S. 925 (1986). These cases all hold that franchise taxes based on a measure including interest from Federal and State obligations qualify under 31 U.S.C. § 3124(a) as nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations.

The cases cited by the plaintiffs do not compel the opposite conclusion. See, e.g., *First Fed. Sav. & Loan Ass'n* v. *Commonwealth,* 515 Pa. 369 (1987) (under Pennsylvania law, statute providing that thrift institutions "shall pay . . . State excise tax . . . upon . . . annual net earnings or income, for the privilege of doing business in [Pennsylvania]" could not be read to require inclusion of interest from State obligations); *Dale Nat'l Bank* v. *Commonwealth,* 502 Pa. 170 (1983) (tax, as calculated, was a property tax and not a franchise tax); *Federal Prods. Corp.* v. *Norberg,* 429 A.2d 447, 450 (R.I. 1981) (interest from Federal securities could not be included in income for assessment of business corporation tax, as opposed to corporate franchise tax).

The companies argue, however, that, even if § 22A is a franchise tax, it is a discriminatory franchise tax and thus not permitted by the Federal statute. The companies assert that § 22A discriminates between Federal and State obligations because Massachusetts law forbids any tax on the interest of State obligations, and thus only Federal obligations are taxed pursuant to § 22A. The short answer to this peculiar argument is that, contrary to the companies' assertion, § 22A requires taxpayers to include in their excise tax base the interest on State obligations as well. Concededly, the enabling acts of certain State authorities exempt State bonds issued by those authorities from taxation on income or property.[8] However, these State obligations are not exempt from forming part of the base on which an excise tax is levied on the privilege of doing business in Massachusetts. See, e.g., *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, *supra* at 617-618 (tax exempt status of income derived from projects pursuant to c. 121A, did not prevent inclusion in the tax base for excise tax purposes).

This conclusion disposes of the companies' argument that the Commissioner's attempt to tax Massachusetts authority bonds impairs a "covenant" made by the Legislature that the bonds remain free from taxation. According to the companies, this impairment violates the contracts clause of the United States Constitution. Art. 1, § 10, of the Constitution of the United States. However, we have concluded above that the fact that the tax base for the excise of § 22A includes the interest earned on State bonds does not mean that the Legislature has imposed a property tax on these bonds. Therefore, no covenant has been broken.

Because § 22A constitutes a "nondiscriminatory franchise tax or another nonproperty tax" within the meaning of 31 U.S.C.

---

[8] For example, the enabling acts of the following authorities exempt the bond interest of the authorities from State taxation: the Massachusetts Bay Transportation Authority, G. L. c. 161A, § 18 (St. 1964, c. 563, § 18), the University of Massachusetts Building Authority, St. 1960, c. 773, § 15, and the Massachusetts Housing Finance Agency, St. 1966, c. 708, § 12. During the years with which we are concerned, the companies held bonds of these three authorities.

§ 3124(a), the imposition of this excise tax does not conflict with Federal law.

2. *Delegation of taxing power.* The companies argue that § 22A grants the Commissioner "the absolute power to determine the excise tax unchecked by any clear statement of policy, and without any judicial or administrative supervision whatsoever." The companies therefore assert that § 22A embodies a delegation by the Legislature of its taxing power in violation of the Massachusetts Constitution. We do not agree. This argument also is precluded by *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co., supra.* There we held that under § 22A, "[t]he Commissioner of Insurance does not include or exclude items in the annual statement for the purpose of affecting the amount of the excise tax, but rather for the purpose of regulating the companies. His power to affect the amount of tax payable under the formula established by the Legislature is purely incidental to those regulatory powers. The taxing power remains with the Legislature as provided in the State Constitution. Part II, c. 1, § 1, art. 4, of the Masschusetts Constitution." *Id.* at 610.

3. *Equal protection and reasonableness.* The companies assert that § 22A discriminates against domestic insurance companies by taxing them more heavily than foreign companies and other types of domestic businesses. The companies argue that § 22A, therefore, violates their rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and their right to be free from unreasonable taxation under Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. We do not agree.

"Any distinction in a tax statute that has a rational basis will survive a challenge under the equal protection clause." *Smith* v. *Commissioner of Revenue*, 383 Mass. 139, 141 (1981). See *Seiler Corp.* v. *Commissioner of Revenue*, 384 Mass. 635, 639 (1981). Assuming without deciding that the taxpayers bear a heavier burden than foreign insurance companies doing business in Massachusetts, it is not unreasonable to tax domestic insurance companies differently. The Legislature could rationally decide that the benefits the State accords to domestic insur-

ance companies justify treating them differently from foreign insurance companies. See *Mary C. Wheeler School, Inc.* v. *Assessors of Seekonk,* 368 Mass. 344, 346-350 (1975). The Legislature could also rationally conclude that the nature of the insurance business warrants treating insurance companies differently from other types of companies. See *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 381 Mass. 592, 604-605 (1980).

Similarly, the companies' argument that § 22A is an unreasonable tax in violation of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution is without merit. "[T]he Legislature's choice of gross investment income as reported for regulatory purposes as a rough approximation of the value of the privilege of doing business in the Commonwealth is reasonable." *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co., supra* at 613.

The decision of the board is affirmed.

*So ordered.*